1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID MCFEARSON, | ) | 1:09-CV-02240 DLB HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT |
| | ) | OF HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF THE |
| K. HARRINGTON, | ) | COURT TO ENTER JUDGMENT |
| | ) | |
| Respondent. | ) | ORDER DENYING CERTIFICATE OF |
| | ) | APPEALABILITY |

        David McFearson (hereinafter "Petitioner") is a state prisoner proceeding pro se with a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**Procedural History**

        Petitioner is currently in the custody of the California Department of Corrections and

Rehabilitation pursuant to a judgment of the Kern County Superior Court.  A jury found Petitioner

guilty of Count I, attempted murder (Cal.Penal Code §§ 187 (a), 664); Count II, assault with a

semiautomatic firearm (Cal.Penal Code § 245(b)); Count III, assault with a firearm (Cal.Penal Code

§245(a)(2); Count VI, possession of a controlled substance while armed with a loaded firearm,

(Health and Saf. Code § 11370.1); Count VII, possession of a controlled substance (Health and Saf.

Code § 11377(a); Count IX, possession of a firearm by a felon with a prior felony conviction

(Cal.Penal Code § 12021(a)(1)); Count XI, carrying a loaded firearm with a prior felony conviction

(Cal.Penal Code § 12031(a)(2)(A); and Count XIV, possession of a firearm by a felon (in a separate

1    incident unrelated to Count XI) (Cal.Penal Code § 12021(a)(1). The jury also found the following

2    enhancements true: (1) as to Count I, intentional discharge of a firearm, causing great bodily injury

3    (Cal.Penal Code §12022.53(d); (2) as to Counts I, II, and III, personal use of a firearm (Cal.Penal

4    Code § 12022.5(a); and personal infliction of great bodily injury (Cal.Penal Code § 12022.7).

5           Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District.

6    In its original opinion issued on January 7, 2008, the California Court of Appeal concluded Counts

7    III and VII must be vacated because they were lesser included offenses of other charged crimes and

8    noted other errors in sentencing. Petitioner then appealed his conviction to the California Supreme

9    Court, which accepted the case for review. The California Supreme Court remanded for

10   reconsideration, in light of the People v. Gonzalez, 43 Cal.4th 1118 (2008) (addressing the use of

11   multiple firearm use sentence enhancements).[1] On remand from the California Supreme Court, the

12   California Court of Appeal issued its opinion on November 18, 2008 which: (1) reversed the

13   convictions for Count III and VII; (2) remanded the matter to the trial court for resentencing in light

14   of the reversal and the California Supreme Court's instruction; and (3) affirmed the judgment in all

15   other aspects. See Doc. 8, Exh. 1. The trial court imposed a sentence of thirty-nine years and four

16   months to life.

17          On April 1, 2009, Petitioner filed a habeas petition in the Kern County Superior Court, which

18   the court denied on June 2, 2009.

19          On July 13, 2009, Petitioner filed a habeas petition in the California Court of Appeal, which

20   the court denied on July 17, 2009.

21          On August 13, 2009, Petitioner filed a habeas petition in the California Supreme Court,

22   which the court denied on January 13, 2010.

23          On December 28, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

24   See Doc. No. 1. On May 14, 2010, Respondent filed an answer to the petition. See Doc. No. 8. The

25   parties have consented to Magistrate Jurisdiction. See Doc. Nos. 10, 12.

26

27

28   [1] In People v. Gonzalez 43 Cal.4th 1118 (2008), the California Supreme Court held that after a trial court imposes the firearm
     enhancement with the greatest term, the remaining terms should be stayed and not stricken. Gonzalez, 43 Cal.4th 1122 23.

### **Factual Background**[2]

The Court adopts the California Court of Appeal's summation of the facts surrounding

Petitioner's crime and conviction:

In February 2006, Shareco Ervin was talking on his cell phone when he drove into the parking lot of a local convenience store. He noticed [Petitioner] and Renita Lynn Williams in the parking lot as he drove up. Ervin finished his phone call and began to exit the vehicle. When he looked up, he saw [Petitioner] point a gun at him and begin shooting. Ervin ducked to avoid the bullets, but was struck twice in the arm. Ervin admitted knowing Williams's brother, but denied meeting either [Petitioner] or Williams before the shooting.

Daniel Marquez Ozuna was the cashier at the convenience store that night. Just before the shooting. he heard [Petitioner] call out, "Hey, cuz." At the time, [Petitioner] was walking towards the store. [Petitioner] began shooting a gun, but Ozuna could not see at what [Petitioner] was shooting. Ozuna ran behind the counter and lay on the ground until Ervin ran inside the store. Ervin was holding his bleeding arm.

The events leading up to the shooting were described by Williams, [Petitioner's] companion at the time. Williams met [Petitioner] in November 2005. They became romantically involved thereafter. They spent time together, both in Bakersfield, where Williams lived, and in Oakland, where [Petitioner] lived.

On December 24, 2005, [Petitioner] and Williams's brother, Malachi Lilo Walton, got into an argument at the apartment Williams shared with her family. [Petitioner] hit Malachi and then ran out of the house. Williams's other brother, Simeon Walton, followed [Petitioner] outside and threw an ashtray at [Petitioner's] van. [Petitioner] pulled out a gun from inside the car and shot at Simeon. No one was injured and the police were not called.

Williams spoke with [Petitioner] about two hours later. [Petitioner] said he shot at Simeon because he heard the ashtray hit his van and thought Simeon was shooting at him. He also asked if Williams called the police.

Williams's brother, Malachi, and mother, Regina Lynn Bermudas Walton, confirmed Williams's testimony about the incident.

Williams claimed she continued to see [Petitioner] because she was afraid that if she did not [Petitioner] would hurt her family. She saw him most weekends.

In February 2006 [Petitioner] went to Bakersfield to visit Williams. Williams told [Petitioner] she would be at a local fast-food restaurant picking up dinner for her children. As she paid for her food, [Petitioner] pulled into the drive-through lane in the wrong direction, effectively preventing Williams from leaving. [Petitioner] got out of his car and began talking to Williams. An employee from the restaurant came out and asked [Petitioner] to move his car. An argument ensued, but [Petitioner]

---

[2] These facts are derived from the California Court of Appeal's opinion issued on April 10, 2008. See Lodged Doc. 4. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004); Moses v. Payne, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

eventually moved his vehicle.  [Petitioner] and Williams drove away and met in another parking lot.

[Petitioner] got into Williams's vehicle and the two drove around the area.  They ended up at a parking lot in a local park.  Williams and [Petitioner] went for a walk.  There were two other vehicles in the parking lot when they returned to Williams's vehicle.  One of the vehicles left.  [Petitioner] took out a gun and shot at the remaining vehicle for no apparent reason.

The next day Williams called in sick to work because she was afraid that if she went to work [Petitioner] might follow her and shoot her.  [Petitioner] called later that day and arranged to meet Williams.  The two again drove around the area in Williams's vehicle.  They drove to a convenience store and entered the parking lot.  Another vehicle was in the parking lot with a man whom Williams did not know sitting inside.  [Petitioner] said he was going "to show these Bakersfield niggas how it's done," or words to that effect, and got out of Williams's car and began shooting at the other vehicle.

Williams screamed and started backing up her vehicle.  [Petitioner] got back into the car and Williams drove away from the scene.  Williams drove in excess of the speed limit, hoping an officer would pull her over.  When the car ran out of gas, [Petitioner] began pushing the car towards a gas station.  [Petitioner] gave Williams some money then ran off when a security guard began approaching the vehicle.  Williams put gas in her car and drove away.

[Petitioner] called and asked her location.  He became agitated when he could not find Williams, and he threatened to kill her mother and son.  Williams called her mother and warned her.  She then called the police and told them about the shooting and [Petitioner's] threats to her family.

Officer Michael Allred responded to Williams's apartment.  He saw an individual matching [Petitioner's] description walking in a parking lot near the apartment.  The pedestrian ran away when Allred used his spotlight in an attempt to identify him.  Allred and other officers chased and eventually arrested the pedestrian, who was indeed [Petitioner].  The officers did not locate any weapons on [Petitioner] when he was arrested.  A firearm was located approximately 40 feet from where [Petitioner] was arrested.  The firearm was in a dirt field on the opposite side of a tall wall.

When [Petitioner] was searched during the booking process, three pills in a plastic baggie were found hidden in his sock.  Testing established the pills were methalenedioxy methamphetamine, commonly known as ecstasy, and that each pill was a useable quantity.

[Petitioner] called Williams shortly after he was arrested.  He told her not to say anything.

A few days later Williams called Ervin.  She obtained Ervin's girlfriend's phone number from someone, but she could not remember from whom.  Williams told Ervin she did not know why [Petitioner] shot him.

Melissa Renee Harts divorced [Petitioner] in 2001.  Harts was close to [Petitioner's] family, so her relationship with him continued after the divorce.  In 2005, Harts purchased a gun for self-protection.  She kept it stored in the trunk of her car.  In December 2005, Harts noticed the gun was missing from the trunk of her car.  She reported the theft of the gun to the police.  The firearm the police recovered at the

1   scene of [Petitioner's] arrest was identified as the firearm purchased by Harts.

2   Officer Richard Dossey Jr. reviewed tapes of conversations between [Petitioner] and
    Willliams while [Petitioner] was incarcerated.  During one or more of those
3   conversations, [Petitioner] suggested that Williams would not have to testify if she
    could not be found by the police.  He also instructed her to deny that she signed any
4   statements, suggesting she testify that she signed a blank piece of paper and the police
    wrote the statement after it was signed.

5
6   [Petitioner] testified that Harts purchased the gun for him as a birthday present.  Harts
    purchased the gun because, as a felon, [Petitioner] was not permitted to buy a gun.
    [Petitioner] usually kept the gun with him.
7
8   On Christmas Eve, [Petitioner] drove to Bakersfield to visit Williams.  During the
    visit, Malachi began calling him names.  When [Petitioner] tried to walk away,
    Malachi spit on him.  [Petitioner] hit Malachi in the face, knocking him down.
9   [Petitioner] ran to his vehicle.  He saw Simeon running towards him with something
    in his hand while yelling threats.  Several people from the house followed Simeon
10  outside.  Simeon threw the object and hit [Petitioner's] vehicle.  [Petitioner] grabbed
    his gun from under the seat of the vehicle and fired two rounds in a safe direction, not
11  intending to shoot anyone.  He then got into his vehicle and left.

12  [Petitioner] and Williams smoked marijuana together.  Williams supplied the
    marijuana.  She told [Petitioner] that she bought the marijuana from Ervin.
13
14  [Petitioner] admitted being in the park with Williams, but denied shooting at anyone.
    The next night he again met Williams.  They drove around, eventually ending up at
    the convenience store.
15
16  [Petitioner] and Williams were talking in the car when Ervin pulled up in his vehicle.
    [Petitioner] and Ervin stared at (mad dogged) each other.  [Petitioner] asked Williams
    if she knew the person at whom he was staring.  Williams said she did, and that Ervin
17  [would] "kill [her] at the drop of a dime."  [Petitioner] exited the vehicle to go into
    the store while still staring at Ervin.  As he approached the store, it appeared to
18  [Petitioner] that Ervin grabbed a weapon and tried to open the door.  [Petitioner]
    pulled out his gun and shot at Ervin as he, [Petitioner], was running back to
19  Williams's vehicle.  [Petitioner] claimed he was firing to pin Ervin down so he and
    Williams could escape.
20
21  [Petitioner] and Williams drove until the vehicle ran out of gas.  [Petitioner] pushed
    the vehicle towards a gas station, but stopped in a restaurant parking lot when he
    became tired.  Williams left to buy gas.  After she left, a security guard approached
22  the vehicle.  [Petitioner] panicked and ran away.  He called Harts to come and pick
    him up.
23
24  [Petitioner] called Williams after dropping Harts at her house.  [Petitioner] and
    Williams tried to find each other but could not do so.  Williams eventually told
25  [Petitioner] to meet her in the parking lot of her apartment building.  [Petitioner]
    parked his car in a convenience store parking lot and looked for a place to hide the
    gun.  When he could not find a suitable place, he threw it over a wall into the dirt
26  field in which the gun was eventually found.  [Petitioner] then walked to the
    apartment building parking lot, but Willliams was not there.  [Petitioner] was walking
27  back to the convenience store when he was spotted by the police and arrested.
    [Petitioner] denied threatening to kill anyone.
28
    See Answer, Exh. 1 at 3-8.

**Discussion**

**I.      Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may file a petition for a writ of habeas corpus in the United States district courts if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, n.7 (2000).  Venue for a habeas corpus petition challenging a conviction is proper in the judicial district in which the petitioner was convicted.  28 U.S.C. § 2241(d).

As Petitioner asserts that he is in custody pursuant to a State conviction which violated his rights under the United States Constitution, the Court has jurisdiction over this action.  28 U.S.C. § 2254(a).  Petitioner was convicted in Kern County, California, which is within the Eastern District of California, and thus venue is proper in the Eastern District.  28 U.S.C. § 84; 28 U.S.C. § 2241(d).

**II.     Standard of Review**

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).  The instant petition was filed after the enactment of AEDPA and is consequently governed by its provisions.  See Lockyer v. Andrade, 538 U.S. 63, 70 (2003).  Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)), overruled in part on other grounds, Hayward v. Marshall, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); see Lockyer, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  See Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-27 (9th Cir. 2006) overruled in part on other grounds, Hayward, 603 F.3d at 555.  As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lockyer, 538

U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Id. (quoting Williams, 529 U.S. at 412).  "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.  Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law."  Id. at 72 (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.  "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  Clark v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While only the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999) ("[B]ecause of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit

1   precedent on a federal Constitutional issue. . . .  This does not mean that Ninth Circuit case law is

2   never relevant to a habeas case after AEDPA.  Our cases may be persuasive authority for purposes of

3   determining whether a particular state court decision is an 'unreasonable application' of Supreme

4   Court law, and also may help us determine what law is 'clearly established'").  Furthermore, AEDPA

5   requires that the Court give considerable deference to state court decisions.  The state court's factual

6   findings are presumed correct.  28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's

7   interpretation of its own laws.  South v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002).

8        The initial step in applying AEDPA's standards is to "identify the state court decision that is

9   appropriate for our review."  Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where more

10  than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

11  reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption

12  that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

13  ground as the prior order).  Thus, a federal habeas court looks through ambiguous or unexplained

14  state court decisions to the last reasoned decision to determine whether that decision was contrary to

15  or an unreasonable application of clearly established federal law.  Bailey v. Rae, 339 F.3d 1107,

16  1112-13 (9th Cir. 2003).

17       In the instant petition, Petitioner raises two grounds for relief.  Petitioner raised both grounds

18  through direct appeal to the California Court of Appeal, which affirmed the judgment in a reasoned

19  opinion.  See Answer, Exh. 1.  Petitioner's claims were then raised in a petition for review to the

20  California Supreme Court, which summarily denied review.  See Resp't Lodged 7.  The California

21  Supreme Court, by its "silent order" denying review is presumed to have denied the claim for the

22  same reasons stated in the opinion of the lower court.  Ylst v. Nunnemaker, 501 U.S. 797, 803

23  (1991).  Therefore, the Court "look[s] through" this decision to the last reasoned decision, in this

24  case, that of the California Court of Appeal, and analyzes whether the state court's decision was an

25  objectively unreasonable application of federal law.  See Nunnemaker, 501 U.S. at 803-804.

26  **III.**     **Review of Petitioner's Claims**

27       Petitioner's Ground One asserts that the Prosecutor's comments made at closing argument

28  amount to prosecutorial misconduct in violation of due process and Petitioner's right to a fair trial.

See Petition at 13. In Ground Two, Petitioner contends the trial court erred in failing to sua sponte provide jury instructions regarding the burden of proof required for Petitioner's claim of self-defense. Petitioner argues the omission of the instruction again violate due process and his right to a fair trial. See Petition at 28. For both Grounds One and Two, Petitioner alternatively argues he received ineffective assistance of counsel in violation of his Sixth Amendment rights provided by the United States Constitution.

### A.    Ground One:  Prosecutorial Misconduct.

Petitioner contends the prosecutor's closing statements addressing Petitioner's self-defense claim were improper and constitute prosecutorial misconduct because the prosecutor misstated the law of self defense and additionally suggested that Petitioner and his counsel had fabricated the defense.[3]

The California Court of Appeal denied the claim in the last reasoned decision stating:

> [Petitioner] testified he shot at Ervin because he believed Ervin was going to shoot at him. During closing argument, the prosecutor argued the claim of self-defense was baseless. During his closing argument, [Petitioner's] counsel suggested that [Petitioner] thought Ervin was going to pull out a gun when he put his cell phone down while seated in the car. This argument brought the following rebuttal from the prosecutor:
>
> "One of the things you need to think about is the defendant says there was a gun in the victim's possession that night."
>
> "How many officers testified up on that witness stand? How many officers said: I located a gun at the scene of the Day & Night Market?"
>
> "There were no questions asked of those officers by defense: Did you locate a gun?"
>
> "When asked by me: What items of evidence did you locate? The officers testified about finding casings, about finding bullets. Not a single officer located the gun."
>
> "So if there was a gun, where was that gun?"
>
> "The cars get towed. The cars were inspected. Mr. Marquez testified. He wasn't asked by the defense if he hid a gun or did anything of that nature."
>
> "Where is this invisible gun?"
>
> "There was never any gun. That's why no one ever testified about the victim, Mr.

---

[3] Petitioner argues in the alternative, that if the Court finds his counsel's failure to raise objections to the prosecutor's statements at trial results in waiver, that he received ineffective assistance of counsel based on his counsel's oversight. See Petition at 13. However as discussed below, because there is no merit to Petitioner's claim of prosecutorial misconduct, his attorney would have had no duty to object. Thus, we reject Petitioner's claim of ineffective assistance of counsel.

Ervin, having a gun."

"So counsel, because there isn't any gun, would have you believe:  Well. that's all right.  What the defendant saw was not really a gun.  But in the defendant's mind it was when he put away the cell phone.  The defendant thought by putting away that cell phone -- the defendant thought that was a gun, because they can't account for why there's no gun.  So let's use the cell phone for that allegedly being the gun."

"So the defendant would have you believe that he's gone up to this guy who he's just been told is a scary person, that Ms. Williams just told her boyfriend:  That guy over there, he's really mean."

"So the defendant decides:  I'm just going to go up there with my gun.  And he's looking at this guy, basically, confronting him, throwing some looks at him back and forth.  And he gets his gun and he shoots at this guy.  And all of this is done in his perceived self-defense theory when all the evidence is contrary to his story that he gave you on the witness stand."

[Petitioner] contends that the prosecutor's rebuttal argument constituted misconduct because it misstated the law of self-defense and insinuated that [Petitioner] and his counsel fabricated the defense.

The People urge us to reject the argument as forfeited because [Petitioner] failed to object at trial.  "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion-and on the same ground-the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 820.)  The failure to object results in a forfeiture of the issue.  (*People v. Partida* (2005) 37 Cal.4th 428,433-436.)

[Petitioner] argues that no objection was necessary because his constitutional rights were violated or, if an objection was required, he received ineffective assistance of counsel.  We conclude there was no prosecutorial misconduct, so counsel was not ineffective for failing to object.

The applicable federal and state standards regarding prosecutorial misconduct are well established.  "'A prosecutor's . . . intemperate behavior violates the federal Constitution when it comprises a pattern of conduct so egregious that it infects the trial with such fairness as to make the conviction a denial of due process.'" [Citations.]  Conduct by a prosecutor that render[s] a criminal trial fundamentally unfair is prosecutorial misconduct under state law only if it involves "'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'  [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

. . .

The comments to which [Petitioner] objects fall within the scope of permissible argument.  The prosecutor was attacking [Petitioner's] claim of self-defense.  The most obvious defect in the claim was that Ervin was not armed.  The prosecutor was attempting to focus the jury on this defect with her references to the lack of evidence that Ervin was armed.

The remainder of the quoted portion of the argument relates to the prosecutor attacking [Petitioner's] credibility.  Since [Petitioner] testified at trial, and was the only witness to support his claim of self-defense, his credibility was a central issue at trial.  The prosecutor was entitled to address the issue during her rebuttal argument.

We do not read the prosecutor's argument, as [Petitioner] asks us to do, as accusing [Petitioner's] attorney of fabricating evidence.  Indeed, there is nothing in this argument directed at counsel.  Instead, the prosecutor paraphrased counsel's argument and then urged the jury to reject it as unbelievable.

Nor do we read the prosecutor's argument as informing the jury that [Petitioner's] self-defense argument could be accepted by the jury only if Ervin were armed.  The prosecutor did not make any reference to the law requiring the victim be armed before [Petitioner] could defend himself.  Instead, the prosecutor focused on the assertion that [Petitioner] mistook a cell phone for a firearm, or the act of putting down a cell phone for the act of reaching for a firearm.  Again, the prosecutor urged the jury to reject the argument as unbelievable.

[Petitioner's] assertion of prosecutorial misconduct is based on a reading of the record with which we cannot agree.  There was no misconduct.

See Answer, Exh. 1 at 11-14.

A habeas petition will be granted for prosecutorial misconduct only when the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 171 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, (1974)); see Bonin v. Calderon, 59 F.3d 815, 843 (9th Cir. 1995).  To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial."  Greer v. Miller, 485 U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S. 667 (1985)).  Under this standard, a petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety, the verdict probably would have been different.

Here, the Court agrees with the Court of Appeal's analysis that the Prosecutor's statements were acceptable rebuttal of Petitioner's claim of self defense and not an inappropriate suggestion that defense counsel fabricated the theory or mistatement of law.  See Reporter's Transcript ("RT") at 535-37.  Given that Petitioner's defense centered on his sole testimony and the credibility of that testimony, the prosecutor was entitled to argue that the opposing side was not telling the truth.  See United States v. Trevino, 419 F.3d 896, 902 (9th Cir. 2005).

The California Court of Appeal did not unreasonable apply clearly established federal law.  It articulated the relevant federal standard to determine whether the prosecutor's statements amounted to misconduct by so infecting the trial with unfairness so as to make the conviction a denial of due process and aptly applied this standard to this case.  Furthermore, its decision was not based on an

1    unreasonable application of the facts in the record.  It properly outlined the prosecutor's rebuttal

2    argument and correctly found that the prosecutor's statements were simply an attempt to discredit

3    Petitioner's testimony and defense theory.  Therefore, the state appellate court's decision did not run

4    afoul of the standard articulated in 28 U.S.C. § 2254(d).

5        Petitioner has also failed to show that the prosecutor's statements had a substantial and

6    injurious effect on the jury's verdict, which further warrants denying relief on this claim.  Strong

7    evidence, including Petitioner's own admission that he had fired his gun multiple times at the victim,

8    supported the jury's findings of guilt.  See RT at 422, 449-450.  In addition, though Petitioner

9    testified regarding his claim of self-defense, the jury clearly rejected this testimony.  See RT at 449-

10   452.  It is well established that a reviewing court must "must respect the province of the jury to

11   determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences

12   from proven facts by assuming that the jury resolved all conflicts in a manner that supports the

13   verdict."  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).  Thus, even assuming the

14   prosecutor's statements were improper, we cannot say that they had a substantial and injurious effect

15   on the jury's verdict.  Accordingly, Petitioner is not entitled to federal habeas relief on this ground.

16       **B.     Ground Two:  Instructional Error**

17       Petitioner contends that the trial court erred in failing to instruct the jury sua sponte that his

18   claim of self-defense need only raise a reasonable doubt as to his guilt pursuant to People v. Sanchez,

19   (1947) 30 Cal.2d 560, 570-71 ("Sanchez").  Petitioner argues the trial court's omission of this

20   instruction resulted in a violation of his "federal due process rights to a fair trial."  See Petition at 28.

21   Petitioner alternatively argues, that if the trial court was under no duty to provide such instruction, he

22   received ineffective assistance of counsel for his counsel's failure to request the instruction.  Id.

23       In the last reasoned state court decision, the Court of Appeal first discussed whether under

24   California law, the trial court was required to sua sponte provide the additional instruction.  See

25   Answer, Exh. 1 at 15-29.  However, rather than resolving this issue, the Court of Appeal found the

26   trial court's issuance of the CALCRIM No. 505 instruction provided sufficient instruction to the

27   jury.  Id. at 21.  The Court of Appeal concluded:

28       [E]ven if there was error, reversal is not required. The jury was instructed with
         CALCRIM No. 505.  The instruction informed the jury on the elements of a

justification defense and, as relevant to the issue before us, also informed the jury that "The People have the burden of proving beyond a reasonable doubt that the attempted killing was not justified.  If the People have not met this burden, you must find the defendant not guilty of attempted murder or attempted voluntary manslaughter."  This instruction adequately conveyed to the jury that it was the People's burden to prove beyond a reasonable doubt that [Petitioner] did not act with justification when he shot Ervin.  In other words, the instruction informed the jury that if [Petitioner's] claims of self-defense resulted in reasonable doubt about whether the shooting was unlawful, then it must find [Petitioner] not guilty.  This is the same concept contained in a Sanchez instruction.  It is also clear that the jury understood the instructions because it found [Petitioner] not guilty of the assault with a firearm in the incident involving Williams's brother.  The jury apparently concluded that [Petitioner] acted in self-defense in that incident.

The concepts contained in CALCRIM No. 505 and the resulting lack of prejudice also compel the conclusion that [Petitioner's] counsel was effective.  A defendant must prove both that his attorney was deficient because he or she acted below an objective standard of reasonableness under prevailing professional norms, and that had his or her attorney acted differently it is reasonably probable he or she would have received a better result. (People v. Dennis (1998) 17 Cal.4th 468, 540-541.)  Since the reason for requesting a Sanchez instruction was adequately covered in CALCRIM NO. 505, it was not unreasonable for defense counsel to fail to request a Sanchez instruction.  Moreover, since [Petitioner] did not suffer any prejudice as a result of the failure to instruct the jury with a Sanchez instruction, it is not reasonably probable he would have received a better outcome if the instruction had been requested. [Petitioner's] contention fails.

See Answer, Exh. 1 at 21-22.

Claims based on instructional error under state law are not cognizable on federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983)).  An erroneous jury instruction does not warrant federal habeas relief unless it so infected the entire trial that the resulting conviction violates due process.  Id. at 72.  It is not enough to show that the instruction was "undesirable, erroneous, or even universally condemned," but rather, it must have actually rendered the trial fundamentally unfair.  Id.  The challenged instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record."  Id.  If the instructions, when considered in this manner, are found to be ambiguous, then a due process violation results only if there is a reasonable likelihood that the jury misapplied the challenged instruction in such a way that it violated the petitioner's constitutional rights. Id. (citing Boyde v. California, 494 U.S. 370, 380 (1990)); see also Middleton v. McNeil, 541 U.S. 433, 436 (2004).  Moreover, if the petitioner is a state prisoner challenging his conviction under 28 U.S.C. § 2254, then he must additionally show that the

1   unconstitutional instruction had a "substantial and injurious effect or influence in determining the
2   jury's verdict." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637 (1993).  The burden on [Petitioner is
3   especially heavy where the alleged error involves the failure to give an instruction.  <u>Byrd v. Lewis</u>,
4   566 F.3d 855, 860 (9th Cir. 2009), cert. denied, --- U.S. ----, 130 S.Ct. 2103, 176 L.Ed.2d 733 (2010)
5    (quoting Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006)).

6          For the reasons stated by the California Court of Appeal, the undersigned finds that the
7   instructions given adequately instructed the jury regarding Petitioner's claim of self-defense and the
8   associated burden.  The trial court's instruction properly placed the burden on the prosecution to
9   prove beyond "a reasonable doubt that the attempted killing was not justified."  <u>See</u> CT 314-16.  The
10  Court agrees with the Court of Appeal's finding that this instruction embodied the same concept as
11  provided in a <u>Sanchez</u> instruction, ie. that if Petitioner's self-defense claim had raised a reasonable
12  doubt, he should not be found guilty.

13         With regard to whether the state court's decision was an unreasonable application of federal
14  law, Petitioner's arguments are unpersuasive.  The Supreme Court has stated that the Constitution
15  does not require that any particular form of words be used in advising the jury of the government's
16  burden of proof.  Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of
17  reasonable doubt to the jury."  <u>Victor v, Nebraska</u>, 511 U.S. 1, 5 (1994) (quoting <u>Holland v. United</u>
18  <u>States</u>, 348 U.S. 121, 140 (1954)) (internal citation omitted).  In this case, the state court concluded
19  that the trial court's instructions "adequately conveyed to the jury that it was the People's burden to
20  prove beyond a reasonable doubt that [Petitioner] did not act with justification . . . ."  <u>See</u> Answer,
21  Exh. 1 at 22.  Petitioner has failed to show that this was an unreasonable application of federal law
22  regarding the concept of reasonable doubt.

23         In addition, the trial court read and gave copies of numerous instructions to the jury regarding
24  the ultimate burden of proof (<u>See</u> RT 548-49; CT 279), and the burden of proof on the issue of
25  self-defense (<u>See</u> RT 570-73, 566-68; CT 314-16).  It is unreasonable to assume that the jury was
26  confused as to the ultimate burden because, as noted by the Court of Appeal, the jury applied these
27
28

1   same instructions to find that Petitioner had acted in self-defense in an entirely separate incident

2   (involving Williams' brother).  See Answer, Exh. 1 at 22.  Moreover, if there was ambiguity as to the

3   evidentiary burden or showing required for Petitioner claim of self-defense, Petitioner has failed to

4   show that this ambiguity rendered his trial fundamentally unfair.  Estelle, 502 U.S. at 72.  On this

5   point, it is worth noting that other than Petitioner's own testimony, there was no evidence presented

6   to support Petitioner's claims of self-defense.  As discussed above, we properly leave undisturbed

7   both the jury's evaluation of the credibility of Petitioner's testimony and any reasonable inferences

8   drawn therein.  Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

9        Accordingly, Petitioner has failed to meet his burden under either avenue of federal habeas

10  relief.  He has failed to show that the state court's decision rejecting his claim that the trial court

11  violated his right to due process by giving an ambiguous instruction on the burden of proof was

12  contrary to, or an unreasonable application of, clearly established federal law.  He has also failed to

13  show that the state court's decision was based on an unreasonable determination of the facts in light

14  of the evidence presented to the state court.  Therefore, the Court denies Petitioner's claim for habeas

15  relief on this issue.[4]

16  **IV.     Certificate of Appealability**

17       A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

18  district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-

19  El v. Cockrell, 537 U.S. 322, 336  (2003).  The controlling statute in determining whether to issue a

20  certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may

21  issue a certificate of appealability where "the applicant has made a substantial showing of the denial

22  of a constitutional right."  Where the court denies a habeas petition, the court may only issue a

23  certificate of appealability "if jurists of reason could disagree with the district court's resolution of

24

25  [4] Regarding Petitioner's alternate claim of ineffective assistance of counsel at Ground Two, because there is no merit to
Petitioner's claim of instructional error, we cannot say his attorney's failure to request the additional instruction resulted in

26  in either deficient performance or prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984); Lowry v. Lewis, 21 F.3d
344, 346 (9th Cir. 1994).  Thus, similar to Petitioner's Ground One, we reject Petitioner's alternate claim of ineffective

27  assistance of counsel.

28

his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 326; Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338. In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable; thus Petitioner's claim is not deserving of encouragement to proceed further. Consequently, the Court hereby denies a certificate of appealability.

## ORDER

Accordingly, the Court ORDERS that:

1.      The petition for writ of habeas corpus is DENIED WITH PREJUDICE;

2.      The Clerk of the Court is DIRECTED to enter Judgment for Respondent; and

3.      A Certificate of Appealability is DENIED.


IT IS SO ORDERED.

Dated:   __June 15, 2011__          _____ /s/ **Dennis L. Beck**_____
                                   UNITED STATES MAGISTRATE JUDGE